[No. B095547. Second Dist., Div. Seven. July 15, 1997.]

MALLARD CREEK INDUSTRIES, INC., Plaintiff and Appellant, v. GARY MORGAN et al., Defendants and Respondents.

428

**COUNSEL**

Joel F. Tamraz for Plaintiff and Appellant.

Anderson, McPharlin & Conners, Eric A. Schnieder and John J. Immordino for Defendants and Respondents.

**OPINION**

**JOHNSON, J.**—This is an action for trademark infringement and unfair business practices. Appellant, Mallard Creek Industries, Inc. (Mallard Creek), sought an injunction to prevent respondents, Gary Morgan and Gary Morgan, Inc., doing business as Mallard Creek Distributors (collectively Mallard Creek Distributors), from using the former's name and logo to sell bagged wood shavings. Mallard Creek Distributors claimed it had permission to use Mallard Creek's name and logo and had done so for over 10 years without objection. Mallard Creek Distributors relied on Business and Professions Code section 14342 which prevents actions for infringement of a registered trademark against anyone who has adopted and lawfully used the same or confusingly similar mark in the manufacture or sale of the same or similar goods from a date prior to the complaining party's registration of the trade or service mark. Mallard Creek Distributors also claimed it had permission to use Mallard Creek's name and logo without limitation.

The trial court found Mallard Creek Distributors had "used" Mallard Creek's name and trademark with its permission for years prior to Mallard

Creek's registration of its logo with the California Secretary of State. It therefore found the defense of Business and Professions Code section 14342 applied and granted summary judgment in favor of Mallard Creek Distributors.

We conclude the defense of Business and Professions Code section 14342 does not apply to a distributor who had the manufacturer/owner's permission to "use" its name and trademark for the sole purpose of distributing the manufacturer/owner's products. We conclude permission for this type of "use" is not the "use" envisioned by the statute nor the type of "use" generally protected by trademark and unfair business practice law. We therefore further conclude the trial court erred as a matter of law in interpreting this provision and reverse the summary judgment in favor of Mallard Creek Distributors.

## FACTS AND PROCEEDINGS BELOW

Mallard Creek produces baled wood shavings. Mallard Creek filed its articles of incorporation in the early 1980's. At the time Steve Morgan, respondent Gary Morgan's brother, owned 50 percent of the shares.

Mallard Creek sells its wood shavings for use as mulch or stable bedding material. It packages its wood shavings in plastic bags containing several cubic feet of material. On the exterior of the bags is the Mallard Creek name and address in Rocklin, California. Rocklin is located just outside Sacramento. Mallard Creek's plastic bags are also emblazoned with its logo consisting of two ducks flying off from a marsh. Mallard Creek sells its wood shavings through feedstores throughout the state.

In 1982, Gary Morgan became Mallard Creek's distributor in Southern California. For this purpose he used the corporate entity Gary Morgan, Inc., as the business entity operating under the fictitious business name Mallard Creek Distributors. As Mallard Creek's distributor, Gary Morgan distributed Mallard Creek's baled wood shavings bearing the Mallard Creek name and logo. With Mallard Creek's express permission, Gary Morgan also promoted Mallard Creek's wood shavings using its name and logo. He used Mallard Creek letterhead in his correspondence. He prepared ads using Mallard Creek's name, address and logo.

In 1989 Steve Morgan, Gary Morgan's brother, acquired ownership of 100 percent of the outstanding shares of Mallard Creek. In 1990 Steve Morgan

sold his interest in Mallard Creek to Carl E. Hass. Mr. Hass continues to operate Mallard Creek from its location in Rocklin, California.

On April 3, 1992, Mallard Creek obtained a certificate of registration of trademark from the Secretary of State of California for its logo of a pair of ducks flying off a marsh.

In December 1992, Mallard Creek learned Mallard Creek Distributors was filling and selling its own plastic bags of wood shavings. The plastic bags were of the same type and color Mallard Creek used. The plastic bags bore the name "Mallard Creek Distributors" and used the Mallard Creek logo of a pair of ducks flying off a marsh. Mallard Creek Distributors sold its wood shavings through feedstores in direct competition with Mallard Creek.

In January 1993, Mallard Creek wrote Mallard Creek Distributors a letter requesting it cease and desist selling its own bagged wood shavings using the Mallard Creek logo and confusingly similar name. Mallard Creek Distributors refused.

In October 1994, Mallard Creek brought suit against Mallard Creek Distributors and others. Its complaint alleged causes of action for trademark infringement and unfair competition. Mallard Creek sought an injunction and requested damages of over $1 million. The next month Gary Morgan renamed his business and stopped using Mallard Creek's logo.

After conducting some preliminary discovery, Mallard Creek Distributors moved for summary judgment. Mallard Creek Distributors argued it had used the Mallard Creek name and logo since 1982 with Mallard Creek's express permission. It argued that because Mallard Creek did not register its logo with the Secretary of State until 1992, Business and Professions Code section 14342 constituted a complete defense to the action. It pointed out this section provides a registered service or trademark may not be enforced against someone who has lawfully used the mark in a same or similar business from a date prior to its registration.[1]

The trial court found as a matter of fact Steve Morgan gave his brother Gary Morgan permission to use the Mallard Creek name to operate his

---

[1]Mallard Creek Distributors also argued the statute of limitations barred Mallard Creek's action. On appeal, it acknowledges the statute of limitations defense is unavailable because the facts established Mallard Creek Distributors used the name and logo until one month *after* Mallard Creek filed suit. (*Schmidt* v. *Brieg* (1893) 100 Cal. 672, 681-682 [35 P. 623] [mere delay and silence, although with knowledge of infringement, do not amount to consent and are no bar to relief against a continuance of the infringement].)

distributorship business in Southern California. The court noted Mallard Creek Distributors had used the name and logo prior to its registration by Mallard Creek. Thus, the court granted Mallard Creek Distributors' request for summary judgment, persuaded by the argument that in this context Business and Professions Code section 14342 constituted a defense to the entire action.

Mallard Creek appeals from the ensuing judgment of dismissal.

## DISCUSSION

### I. *Standard of Review of a Summary Judgment.*

■ "California Code of Civil Procedure section 437c requires the trial court to grant summary judgment in a case if no triable issue exists as to a material fact, and if the papers submitted on the motion entitle the moving party to judgment as a matter of law. Summary judgment proceedings may, as they did here, also raise questions of law.

". . . The moving party's affidavits are strictly construed by the trial court, and the opponent's affidavits are liberally construed; doubts about the propriety of granting the motion are resolved by denying summary judgment, due to the drastic nature of the procedure. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) 'Where as in the case at bar, a *defendant* seeks summary judgment, his declarations and evidence must either establish a complete defense to plaintiff's action or demonstrate an absence of an essential element of plaintiff's case. If defendant establishes the foregoing, and the plaintiff's declaration in reply does not show that there is a triable issue of fact with respect to that defense or that an essential element exists, the summary judgment should be granted. [Citation.]' (Italics in text; *Dolquist* v. *City of Bellflower* (1987) 196 Cal.App.3d 261, 266 [241 Cal.Rptr. 706].)

"These general principles also apply to an appellate court's review of a summary judgment ruling, except that an appellate court examines the facts presented to the trial judge on a summary judgment motion and independently determines their effect as a matter of law. (*Bonus-Bilt, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357].) We also conduct independent review of the trial court's determination of questions of law. We are not bound by the trial court's stated reasons, if any, supporting

its ruling; we review the ruling, not its rationale. (*Barnett* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].)" (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

We review the ruling of the trial court with these standards in mind.

## II. *Mallard Creek's Allegations and Evidence Established Prima Facie Cases of Trademark Infringement and Unfair Competition.*

 Mallard Creek filed its articles of incorporation with the name "Mallard Creek Industries, Inc." in the early 1980's and has used the name continuously thereafter. Because it was the first to use the name "Mallard Creek" it is entitled to a presumption of ownership. Business and Professions Code former section 14400 stated[2] that "[a]ny person who has first adopted and used a trade name, whether within or beyond the limits of this State, is its original owner."

Under section 14415 the first entity filing articles of incorporation (or if a foreign corporation, obtaining a certificate of qualification), and continuing to engage in that trade or business is entitled to a rebuttable presumption the corporation has the exclusive right to use the name set forth in the articles or certificate as well as any confusingly similar name. A similar presumption arises under section 14411 upon filing a fictitious business name statement. Section 14416 provides that as between competing claimants under sections 14411 and 14415, the first to file and use the name shall be entitled to the presumption. Once ownership is established, section 14402 provides for injunctive relief to restrain use of a trade name in violation of these rules. (See *Stork Restaurant, Inc.* v. *Sahati* (9th Cir. 1948) 166 F.2d 348, 353 [a property right in a trade name will be recognized perhaps even more readily when it embodies the distinctive part of the owner's corporate name]; see also 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 84, p. 761 [in California, the protection of trademarks and trade names does not rest on the fraud theory alone; state statutes treat them as property rights of the originator or appropriator]; Competitive Business Practices (Cont.Ed.Bar 1991) Trademarks, § 6.5, p. 409 [legal protection of trade names and trademarks is intertwined].)

Under section 14200 et seq. a person who has registered a trademark is entitled to injunctive relief against use of any mark likely to cause confusion with goods or services sold under its registered mark. Even in the absence of proof of confusion as to the source of the goods or services, relief is available where injury to business reputation of the owner of the mark, or

---

[2]All further statutory references are to the Business and Professions Code.

dilution of the distinctive quality of the mark, is likely. (§§ 14320, 14330, 14340.)

Section 14320 describes an infringing use of a trademark or service mark. This section provides a person shall be subject to a civil action by the owner of the registered mark for the "[u]se, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this chapter in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services." (§ 14320, subd. (a)(1).)

Former section 14330 provided for injunctive relief to prevent dilution of a trademark. This section provided:

"(a) Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

"(b) Any person who uses or unlawfully infringes upon a mark registered under this chapter . . . , other than in an otherwise noninfringing manner, either on the person's own goods or services or to describe the person's own goods or services, irrespective of whether the mark is used primarily as an ornament, decoration, garnishment, or embellishment on or in products, merchandise, or goods, for the purpose of enhancing the commercial value of, or selling or soliciting purchases of, products, merchandise, goods or services, without prior consent of the owner of the mark, shall be subject to an injunction against that use by the owner of the mark. . . ."

Section 14340 authorizes the owner of the mark to file a civil action to enjoin a diluting or infringing use of its mark. (See 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 82 et seq., p. 760 et seq. [for analysis of available remedies].)

■ Liability for trademark infringement and unfair competition exists under California law when an appreciable number of reasonable buyers are likely to be confused by the similarity of the plaintiff's and defendant's marks. (*Weinstock, Lubin & Co.* v. *Marks* (1895) 109 Cal. 529, 537 [42 P. 142] [a similarity which would be likely to deceive or mislead an ordinary unsuspecting customer is obnoxious to the law]; *Stork Restaurant, Inc.* v. *Sahati, supra,* 166 F.2d 348, 354 [this essential element is the same in

trademark cases as in cases of unfair competition unaccompanied by trademark infringement].) Thus, courts have held the federal "likelihood of confusion" standard applies equally to claims under California law. (*Golden Door, Inc.* v. *Odisho* (9th Cir. 1980) 646 F.2d 347, 349 [applying both federal and California law]; see also Competitive Business Practices, *supra*, Trademarks, § 6.10, p. 413.) As explained by the court in *Academy of Motion Picture Arts* v. *Creative House* (9th Cir. 1991) 944 F.2d 1446, 1457, the ultimate test under both federal and California law is whether the similarity between the two marks is likely to deceive or confuse the public.

Courts determine the likelihood of confusion by balancing the following factors: (1) strength of the plaintiff's mark; (2) similarity between the two marks; (3) proximity of the goods; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchasers; (7) defendant's intent in selecting his mark; and (8) likelihood of expansion of product lines. (*AMF, Inc.* v. *Sleekcraft Boats* (9th Cir. 1979) 599 F.2d 341, 348-349; see also Competitive Business Practices, *supra*, Trademarks, § 6.55, pp. 444-445 [outlining applicable test].)

## A. *Strength of the Mark.*

Courts afford strong marks the highest level of protection. These types of marks are either arbitrary or fanciful. (*Saks & Co.* v. *Hill* (S.D.Cal. 1993) 843 F.Supp. 620, 623 [although somewhat descriptive of its location, Saks Fifth Avenue is a strong mark of the highest order in part because it in no way describes the type of merchandise it sells]; *Grey* v. *Campbell Soup Co.* (C.D.Cal. 1986) 650 F.Supp. 1166, 1174 [Godiva is an arbitrary, fanciful and inherently strong trademark, thus defendant was enjoined from selling her Cativa and Dogiva dog and cat biscuits in packaging identical to the trade dress for Godiva chocolate despite her unsubstantiated claim of permissive use].)

Mallard Creek's logo of a pair of ducks flying off a marsh appears to be a fanciful mark. On the one hand it is a strong mark because it does not in any way describe the product Mallard Creek sells. On the other hand, at this point in the lawsuit there is no record evidence to establish the extent of Mallard Creek's advertising, nor the extent of public awareness of its mark. In addition, although the name "Mallard Creek" may be descriptive of some location, nothing in the record indicates its wood shavings are connected with some location called "Mallard Creek." On balance, it is a relatively strong mark.

## B. *Similarity.*

A court determines similarity by analyzing the sight, sound and meaning of the marks. (*Plough, Inc.* v. *Kreis Laboratories* (9th Cir. 1963) 314 F.2d 635, 638.) The two names are virtually identical. Both use "Mallard Creek." The only difference in the two names is one uses "Industries" and the other "Distributors." Nevertheless, the two names are sufficiently similar to create confusion in the public's mind between the two businesses. (See *Industrial Photo Service* v. *Kelly* (1961) 198 Cal.App.2d 665, 667-669 [17 Cal.Rptr. 907] [addition of prefix was not enough to prevent confusion and deception].) As our Supreme Court noted in *Weinstock, Lubin & Co.* v. *Marks, supra,* 109 Cal. 529, 537, " '[s]imilarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another. What similarity is sufficient to effect the object has to be determined in each case by its circumstances. We may say generally that a similarity which would be likely to deceive or mislead an ordinary unsuspecting customer is obnoxious to the law.' "

In addition, both use the identical logo of a pair of ducks flying off a marsh. In addressing a similar claim of an infringing use of a logo in *Schmidt* v. *Brieg, supra,* 100 Cal. 672, 681 our Supreme Court explained " '[w]hat degree of resemblance is necessary to constitute an infringement is incapable of exact definition as applicable to all cases. All that courts of justice can do in that regard is to say that no trader can adopt a trade-mark so resembling that of another trader, as that ordinary purchasers buying with ordinary caution are likely to be misled.' "

Given the identity of names and logo, this factor clearly favors Mallard Creek.

## C. *Proximity of the Goods.*

Examples of "proximate" goods are those which compliment one another, are sold to the same class of consumers, or are similar in use and function. (*Saks & Co.* v. *Hill supra,* 843 F.Supp. 620, 623.) In this case the goods could not be more "proximate." The products are identical— wood shavings. They are used for the identical purpose and serve the same function—mulch or stable bedding. In addition, customers for the two products are the same.

## D. *Evidence of Actual Confusion.*

Because this case was decided at the summary judgment stage there is limited evidence in the record and no evidence demonstrating actual confusion in the buying public's mind. Nor is there evidence tending to demonstrate the contrary. Consequently, this factor must be considered neutral.

### E. *Marketing Channels.*

"Convergent marketing channels increase the likelihood of confusion." (*AMF, Inc.* v. *Sleekcraft Boats, supra,* 599 F.2d 341, 353.) Here both parties sell their wood shavings through feedstores and sell to the same group of customers through these feedstores. In other words, both market their products through the same channels. As a result, likelihood of confusion is increased.

### F. *Type of Goods and Purchaser Care.*

In assessing likelihood of confusion, the standard used is the typical buyer exercising ordinary care, including the ignorant, the inexperienced and the credulous. (*Fleischmann Distilling Corp.* v. *Maier Brewing Co.* (9th Cir. 1963) 314 F.2d 149, 156.) Again, the factual record is inadequately developed to determine the type of care the average wood shavings customer exercises in selecting bags of mulch or stable bedding. There is also no evidence whether bags of wood shavings are expensive or not, and therefore whether a typical customer is more or less likely to exercise a high degree of care. Consequently, this factor is also neutral.

### G. *Intent.*

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." (*AMF, Inc.* v. *Sleekcraft Boats, supra,* 599 F.2d 341, 354.) In this case, Mallard Creek Distributors intentionally adopted the same logo and essentially the same name to sell its own wood shavings to the public. It is therefore presumed the public is deceived by the confusingly similar name and logo.

### H. *Likelihood of Expansion.*

The potential either party will enter the other's markets creates a likelihood of direct competition. (*AMF, Inc.* v. *Sleekcraft Boats, supra,* 599 F.2d 341, 354.) This factor favors Mallard Creek. The fact Mallard Creek Distributors was selling its wood shavings in direct competition with Mallard Creek is the very event which provoked a formal request to Mallard Creek Distributors to cease and desist. It was also the event which triggered this lawsuit after Mallard Creek Distributors chose to ignore Mallard Creek's request.

The fact an alleged infringer is selling its product in direct competition with the senior user of the mark has been described as tantamount to a "fraud

on a person who has established a business for his goods and carries it on under a given name or with a particular mark, for some other person to assume the same name or mark, or the same with a slight alteration, in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a representation to the name or mark." (*Pierce* v. *Guittard* (1885) 68 Cal. 68, 71-72 [8 P. 645].)

 In sum, the majority of the factors demonstrate Mallard Creek Distributors' use of Mallard Creek's name and logo creates a substantial likelihood of confusion and deception. These circumstances are sufficient to establish prima facie cases of both trademark infringement and common law unfair competition. (*Century 21 Real Estate Corp.* v. *Sandlin* (9th Cir. 1988) 846 F.2d 1175, 1178 [the ultimate test for unfair competition is exactly the same as for trademark infringement: whether the public is likely to be deceived or confused by the similarity of the marks]; *Academy of Motion Picture Arts* v. *Creative House, supra,* 944 F.2d 1446, 1457.)

Accordingly, it was error to grant Mallard Creek Distributors' motion for summary judgment unless the statutory defense of section 14342 provided it a complete defense to the entire action.

III. *Section 14342 Is Not a Defense to an Action for Trademark Infringement and Unfair Competition Based on Acts of a Distributor Who Appropriates the Owner/Manufacturer's Name and Logo to Manufacture and Sell His Own Identical Product.*

Mallard Creek Distributors essentially acknowledges its use of the Mallard Creek name and logo to sell its own identical product in direct competition with Mallard Creek would, in other contexts, be an infringing and unfair use. However, it claims it has a complete defense to the action because it had Mallard Creek's consent to use both its name and logo since 1982 when it began distributing Mallard Creek's wood shavings in Southern California. Thus, it argues that because it had been lawfully using the name and logo before the time Mallard Creek registered its logo in 1992, section 14342 prevents Mallard Creek from maintaining a civil action against it for alleged infringing and unfair use of its mark.

Section 14342 protects a prior user of a now-registered service or trademark. This section provides: "No service mark or trademark registered pursuant to this chapter shall be enforced under the provisions of Section 14320, 14330, or 14340, or Section 350 of the Penal Code, *against any party who has adopted and lawfully used the same or a confusingly similar service mark in the rendition of like services or trademark in the manufacture or sale*

*of like goods* in the State of California from a date prior to the effective date of registration of the service mark or trademark under this chapter." (Italics added.)

Mallard Creek Distributors persuaded the trial court that as a distributor of Mallard Creek's product it had permission to "use" Mallard Creek's name and logo to sell wood shavings "from a date prior to" Mallard Creek's registration of its mark. It therefore urged the court to find this section provided it a complete defense.

Although we have found no decision interpreting section 14342, we do not believe the factual circumstances of the present case present the type of "use" envisioned by the statute. A survey of cases reviewing claims of trademark infringement and unfair competition uniformly concern a challenge to a second entity's use of a senior user's trademark, trade name or trade dress to produce, manufacture, market or sell its own product for its own profit.[3]

---

[3]A sampling of California decisions indicates that to "use" a trademark means to adopt and employ it in the manufacture, marketing and sale of one's own product or service. We are aware of no decision which recognizes as a "use" the passive activity of distributing someone else's product. (See, e.g., *Modesto Creamery* v. *Stanislaus etc. Co.* (1914) 168 Cal. 289 [142 P. 845] [action to enjoin defendants from selling their own butter marked with labels intentionally designed to imitate the plaintiff's label]; *Weinstock, Lubin & Co.* v. *Marks, supra,* 109 Cal. 529 [suit to enjoin defendant from using the name "Mechanical Store" to describes his business which defendant copied in every particular from plaintiff's well-known and popular "Mechanics' Store"]; *Schmidt* v. *Brieg, supra,* 100 Cal. 672 [suit to enjoin defendant from selling its own sarsaparilla and iron using a label imitating plaintiff's label in all material respects]; *Pierce* v. *Guittard, supra,* 68 Cal. 68 [defendant enjoined from selling his own chocolate under the name "Sweet German Chocolate" in direct competition with plaintiff's established business of selling "German Sweet Chocolate"]; *North Carolina Dairy Foundation, Inc.* v. *Foremost-McKesson, Inc.* (1979) 92 Cal.App.3d 98 [154 Cal.Rptr. 794] [trademark infringer was selling its own milk products as "Sweet Acidophilus" in competition with plaintiff's trademarked product "Sweet Acidophilus"]; *Industrial Photo Service* v. *Kelly, supra,* 198 Cal.App.2d 665 [defendant copied name of plaintiff's established photo business for his own photo business with the obvious intent of confusing the buying public]; *American Distilling Co.* v. *Bellows & Co.* (1951) 102 Cal.App.2d 8 [226 P.2d 751] [suit to enjoin defendants from selling their whiskey blend under the name "A.J. Fellows" which was confusingly similar to plaintiff's established whiskey blend sold under the trademarked name "Bellows & Co."]; *I. Rokeach & Sons, Inc.* v. *Kubetz* (1935) 10 Cal.App.2d 537 [52 P.2d 567] [suit to enjoin defendant from selling his cooking fat with a label which imitated plaintiff's established label for his cooking fat].)

A sampling of federal trademark and unfair competition cases establish they similarly involve "use" of a trademark, trade name or trade dress by the alleged infringer to manufacture, promote or sell its own product—as opposed to simply distributing someone else's product. (See, e.g., *Academy of Motion Picture Arts* v. *Creative House, supra,* 944 F.2d 1446 [suit to enjoin defendant from marketing its "Star Award," a gold figure closely resembling the Academy's famous "Oscar" statuette]; *Golden Door, Inc.* v. *Odisho, supra,* 646 F.2d 347 [operator of "Golden Door" health and beauty spa was entitled to injunctive relief to prevent

Mallard Creek Distributors cites no authority, and we have found none, which recognizes as a protectable "use" within the meaning of trademark law, a distributor's promotional uses of a registered trademark to sell the trademark owner's products. Of course, a trademark owner may enter into an agreement or other arrangement to permit an infringing or limited use of the mark by a junior user. (See *Exxon Corp.* v. *Oxxford Clothes, Inc., supra,* 109 F.3d 1070, 1076; *Moore Business Forms, Inc.* v. *Ryu, supra,* 960 F.2d 486, 489; *Hank Thorpe, Inc.* v. *Minilite, Inc.* (D.C.Del. 1979) 474 F.Supp. 228, 236-238 [absent an agreement, an exclusive United States distributor does not acquire ownership of a mark of a foreign manufacturer any more than a wholesaler can acquire ownership of a mark of an American manufacturer merely through the sale and distribution of goods bearing the manufacturer's trademark].)[4]

Alternatively, a junior user in California may acquire a recognizable "use" upon the original trademark owner's abandonment of the mark. (See *Family Record Plan, Inc.* v. *Mitchell* (1959) 172 Cal.App.2d 235, 246 [342 P.2d 10] [to establish estoppel by acquiescence in California requires circumstances amounting to abandonment of rights in the mark]; *E. & J. Gallo Winery* v. *Pasatiempos Gallo, S.A.* (E.D.Cal. 1994) 905 F.Supp. 1403, 1415 [same]; see also 4 Witkin, Summary of Cal. Law (9th ed. 1987) Personal Property, § 61, p. 66 [in California registration of a mark may be canceled if abandoned]; Competitive Business Practices, *supra,* Trademarks, § 6.38, p. 435 [same].)

defendant's use of "Golden Door Coiffeur" and "Golden Door for Hair" in operating his hair salons]; *Stork Restaurant, Inc.* v. *Sahati, supra,* 166 F.2d 348 [owner of the famous and elegant night club in New York City called the "Stork Club" entitled to injunctive relief to prevent the defendant's use of the "Stork Club" name for his small, middle-class tavern in San Francisco]; *Exxon Corp.* v. *Oxxford Clothes, Inc.* (5th Cir. 1997) 109 F.3d 1070 [defendant enjoined from using plaintiff's trademark of two interlocking X's to sell its brand of clothes]; *Moore Business Forms, Inc.* v. *Ryu* (5th Cir. 1992) 960 F.2d 486 [paper firm, whose trademark for computer-generated business forms was "Compurite," entitled to injunction to prevent a retailer of computer hardware and related supplies from using the name "CompuRite"]; *Sweetheart Plastics, Inc.* v. *Detroit Forming, Inc.* (4th Cir. 1984) 743 F.2d 1039 [plaintiff sought to enjoin the defendant from making its own rowboat-shaped dishes for banana splits and bowl-shaped dishes for ice cream sundaes where plaintiff had already been marketing these styles of dishes for over 25 years].)

[4]In trademark law there is a presumption the owner of the mark is the first to use the mark, or is the manufacturer of the trademarked product. This presumption may be overcome only on compelling evidence of transfer, abandonment, or agreement to the contrary. Absent an agreement for a distributor to have ownership rights in a mark, "unauthorized, continued use of the trademark will ordinarily involve a breach of the fiduciary relationship and an unfair attempt to exploit consumer familiarity with the mark; . . . . It makes no difference that the agent is called an 'exclusive distributor' (even if that term means more than 'exclusive seller'); the agent's rights derive only from the nature of the contract and the surrounding circumstances." (3 Callmann, The Law of Unfair Competition, Trademarks and Monopolies (4th ed. 1981) General Principles, § 17.17, p. 67, fn. omitted; see also 3 Callmann, *supra,* § 19.17, p. 72 for a discussion of trademark "owners.")

Although not directly on point, the decision in *Ojala* v. *Bohlin* (1960) 178 Cal.App.2d 292 [2 Cal.Rptr. 919] helps to illustrate the distinction between an authorized and protected "use" and an unlawful "permissive use" under trademark and unfair competition law. In *Ojala* v. *Bohlin* the plaintiff developed the design for the "Hollywood Fast Draw Holster." This design permitted the cocking of a single-action revolver and free turning of the cylinder while being withdrawn from the holster. In 1953 he began manufacturing, marketing, advertising and selling his specially designed holsters. A few years later the plaintiff decided to contract out the manufacturing work. The plaintiff delivered his metal designs and patterns to the defendant. The plaintiff agreed to pay the defendant $20 to manufacture each holster. In exchange, defendant agreed to do the work and further agreed he would not compete with the plaintiff in the manufacture and sale of the "Hollywood Fast Draw Holsters." (*Id.* at p. 296.)

Thereafter, the defendant appropriated plaintiff's designs and began to manufacture and market his own holsters. The trial court found, and the appellate court agreed, this practice constituted unfair competition. "Plaintiff's design was entrusted to defendant for one purpose only, namely, the manufacture of the holsters for plaintiff. We regard defendant's agreement not to compete as potent evidence of his duty as a trustee of the design. Having received the design for use in the interests and for the benefit of plaintiff, defendant had no right to use it in any other manner to plaintiff's detriment. The court found that the design was given to defendant in confidence; the information imparted was of great value to plaintiff and was imparted to defendant because of plaintiff's trust and his belief in the integrity of defendant and his confidence that defendant would keep his promise not to compete." (178 Cal.App.2d at pp. 299-300.)

Like Mallard Creek Distributors in this case, the defendant in *Ojala* v. *Bohlin* had permission to "use" plaintiff's designs—but for the limited purpose of manufacturing the holsters for the plaintiff's benefit. On the other hand, permission to use the designs during the manufacturing process did not give the defendant the right to use the designs to make and sell his own holsters for his own benefit.

It would severely undermine the entire body of trademark and unfair competition law if a distributor of trademarked products acquired a protectable and recognized "use" simply because it had the trademark owner's permission to market the owner's products to the public for the owner's

profit.[5] It would certainly have the effect of forcing manufacturers/owners to abandon distributorships for a safer method of placing one's trademarked goods into the stream of commerce.

We can imagine several hypothetical situations demonstrating why Mallard Creek Distributors' interpretation of a protectable "permissive use" acquired as a distributor is erroneous and illogical. For example, large supermarket chains are authorized distributors for thousands of trademarked items. Under Mallard Creek Distributors' interpretation, a supermarket could simply produce glass bottles and labels exactly matching Stolichnaya vodka bottles, fill them with clear liquid resembling vodka and sell them with impunity to the public for the identical price as authentic Stolichnaya vodka and retain all proceeds. It could do the same with boxes of Tide brand laundry detergent, Minute Maid orange juice, and a host of other trademark protected products for which it was an authorized distributor.

Even in the context of formal licensing or franchise agreements, where the limited use is with the express permission of the trademark holder, Mallard Creek Distributors' claimed "permissive use" would not be tolerated. Although the local Chevron dealer is permitted to call itself "Chevron" and affix the Chevron logo to its business papers and advertising, Chevron would surely not consider it an authorized use of its name or logo if the local Chevron service station owner decided to instead fill the tanks with his own gasoline and to retain all profits for himself. (Cf. *Century 21 Real Estate Corp.* v. *Sandlin, supra,* 846 F.2d 1175 [former Century 21 Real Estate franchisee enjoined from using "Century" in his real estate and investment business].)

Certainly when Mallard Creek asked Mallard Creek Distributors to be its Southern California distributor, Mallard Creek expected Mallard Creek Distributors to distribute Mallard Creek product for Mallard Creek's benefit. Mallard Creek Distributors makes no argument to the contrary. It does not attempt to justify its behavior by claiming it had express permission to use the Mallard Creek name and logo to manufacture its own wood shavings and to retain all profit gained in direct competition with Mallard Creek for itself. (See *Exxon Corp.* v. *Oxxford Clothes, Inc., supra,* 109 F.3d 1070, 1076 [when a defendant claims the trademark holder has acquiesced in use of the mark

---

[5]Under federal trademark law a trademark cannot be registered absent evidence of actual sales of the product with the proposed trademark affixed, and absent evidence of customers who have purchased these marked goods from the proposed registrant. (3 Callmann, The Law of Unfair Competition, Trademarks and Monopolies, *supra,* Acquisition, Transfer, Abandonment, § 19.01, p. 6.) In other words, alleged "use without any record of sales" is insufficient to register a mark under federal law. (*W.A. Gaines & Co.* v. *Rock Spring Distilling Co.* (6th Cir. 1915) 226 F. 531, 544.)

the essential inquiry is whether the right granted by the subject agreement permits an infringing use of the mark].)

To state the proposition is to demonstrate its absurdity.

Instead, the record evidence establishes Mallard Creek entrusted its name and logo to Mallard Creek Distributors for one purpose only—to distribute Mallard Creek's wood shavings for Mallard Creek's benefit. Mallard Creek Distributors' own affidavits and declarations submitted with its motion for summary judgment established it received no right to use Mallard Creek's trademark for any other purpose.[6] (*Ojala* v. *Bohlin*, *supra*, 178 Cal.App.2d 292, 299-300.)

In sum, we conclude a distributor of a trademarked product does not acquire a protectable "use" in the trademark simply by virtue of the trademark owner's permission for it to distribute its trademarked products to likely buyers. We therefore further conclude the trial court erred as a matter of law in finding section 14342 provided Mallard Creek Distributors a complete defense to Mallard Creek's action because it had used, and had permission to use, the trademark in selling Mallard Creek's products to the

---

[6]Steve Morgan, former owner of Mallard Creek, submitted a declaration in support of Mallard Creek Distributors' motion for summary judgment. In his declaration Steve Morgan explained the context in which he gave his brother and Mallard Creek Distributors permission to use Mallard Creek's name and logo. He stated: "In 1982, I invited my brother Gary Morgan *to go into business as the Southern California distributor of Mallard Creek Industries, Inc. to sell baled wood shavings*. He did, and through his corporation, Gary Morgan, Inc., formed the fictitious business name Mallard Creek Distributors. He used that name and the two ducks logo with the express permission of Mallard Creek Industries at all times during the time that I owned Mallard Creek Industries, Inc. (through February 28, 1990). I, in my capacity as president of Mallard Creek Industries, Inc. granted such permission." (Italics added.)

Gary Morgan also submitted a declaration describing how he used the Mallard Creek name and logo. "In 1982 after my brother had started a company called Mallard Creek Industries, Inc., he invited me to form my own company *to be the southern California distributor of the Mallard Creek Industries, Inc. baled shavings* . . . . My brother Steve Morgan, who owned and operated Mallard Creek Industries, Inc. until he sold the company to Carl Hass in 1990, had granted me permission to use the name Mallard Creek Distributors and to use the logo of two ducks flying over a marsh." (Italics added.)

These sworn statements are sufficient in themselves to establish Gary Morgan and Mallard Creek Distributors had only limited permission to use the Mallard Creek name and logo—for the sole purpose of distributing Mallard Creek's product for Mallard Creek's benefit. Moreover, the types of uses described in the declarations of letterhead and ads are simply typical indicia of a routine distributorship. (See, e.g., *Cooper Distributing Co., Inc.* v. *Amana Refrigeration, Inc.* (3d Cir. 1995) 63 F.3d 262, 267, 272 [distributor placed Amana ads in the newspapers and telephone directories, advertised as an authorized Amana servicer, distributor's servicemen wore Amana uniforms and distributed promotional items bearing the Amana name].) Consequently, it is of no consequence the trial court struck, for lack of foundation, portions of Carl Hass's declaration which claimed Mallard Creek Distributors had never before used the name or logo to bag, produce or sell its own wood shavings.

general public. Accordingly, we reverse the summary judgment in favor of Mallard Creek Distributors.

## DISPOSITION

The judgment is reversed and the cause remanded with directions to the trial court to vacate the summary judgment and enter a new order denying that motion. Appellant to recover its costs of appeal.

Lillie, P. J., and Woods, J., concurred.