**TWENTIETH CENTURY FOX TELEVISION, et al.**

v.

**EMPIRE DISTRIBUTION INC.**

Case No. CV 15–2158 PA (FFMx)

United States District Court, C.D. California.

Signed February 1, 2016

Daniel M. Petrocelli, Cameron Biscay, Molly M. Lens, O'Melveny and Myers LLP, Los Angeles, CA, for Twentieth Century Fox Television, et al.

Paul L. Gale, Peter N. Villar, Troutman Sanders LLP, Irvine, CA, John M. Bowler, Lindsay M. Henner, Michael D. Hobbs, Jr., Troutman Sanders LLP, Atlanta, GA, for Empire Distribution Inc.

IN CHAMBERS

PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

Before the Court are a Motion for Summary Judgment (Docket No. 41) and a Motion to Strike Expert Report (Docket No. 46) filed by plaintiffs and counterdefendants Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation, and Fox Broadcasting Company (collectively "Fox" or "Plaintiffs"). Defendant and counterclaimant Empire Distribution, Inc. ("Empire Distribution" or "Defendant") has filed oppositions to both Motions, and requests a continuance under Federal Rule of Civil Procedure 56(d). The Court vacates the hearing calendared for February 1, 2016, finding the matter appropriate for decision without oral argument under Federal Rule of Civil Procedure 78 and Local Rule 7–15.[1]

I. *Background*

On January 7, 2015, Fox debuted "Empire," a television series which tells the

---

1. The parties have lodged a large number of evidentiary objections to the evidence supporting their respective statements of facts.

˙ The Court has not relied on any disputed evidence in deciding this Motion.

fictional story of a feuding entertainment industry family (the "Empire Series"). (Declaration of Molly M. Lens in Support of Fox's Motion ("Lens Decl."), Ex. 2.) The Empire Series chronicles the struggle of rapper and drug-dealer turned music mogul Lucious Lyon, who is diagnosed with a fatal disease in the show's premiere. (*Id.,* Ex. 11.) The Empire Series centers around Lucious's ex-wife, Cookie, and their three sons, who fight for future control over Lucious' music and entertainment company "Empire Enterprises." (*Id.*) The Empire Series has been a breakout hit, and Fox has spent millions to advertise the show. (Declaration of Shannon Ryan in Support of Fox's Motion, ¶¶ 2–3.)

One of the unique features of the Empire Series is that music is heavily featured on the show, including songs which were originally produced for the Empire Series. (Declaration of Geoff Bywater in Support of Fox's Motion, ¶ 2.) Fox partners with Columbia Records to release songs following the broadcast of each episode of the Empire Series, which are then collected to create a compilation soundtrack featuring all of the songs from the season (the "Empire Soundtracks"). (Declaration of Andrew Ross in Support of Fox's Motion, ¶¶ 2–3.) Fox offers the Empire Soundtracks for sale in both physical record stores and online stores such as iTunes. (Empire Distribution's Appendix of Exhibits, Ex. 69.) In connection with the Empire Series, Fox also enters into contracts with artists, produces and releases music. It also promotes the artists and their music at radio stations and live performances. (*Id.*)

Defendant Empire Distribution is a record label, music distributor, and publishing company which was founded in 2010. (Declaration of Ghazi Shami in Support of Empire Distribution's Opposition, ¶ 6.) Empire Distribution is a large producer and distributor of urban, hip hop, rap, and R & B music, and has released over 11,000 albums/singles, 6,000 music videos, and 85,000 songs. (*Id.*) Empire Distribution has released multiple platinum and gold records, and has worked with famous artists such as "T.I., Snoop Dogg, Kendrick Lamar, Trinidad James, Too $hort, The Game, Mally Mall, Rich Homie Quan, Tyga, Shaggy, Busta Rhymes, Fat Joe, Sage the Gemini, Cam'ron, Jim Jones, Rocko, Gladys Knight, Rae Sremmurd, and many more." (*Id.* ¶¶ 7–15.)

Empire Distribution uses the trademarks "Empire," "Empire Distribution," "Empire Publishing," and "Empire Recordings." (*Id.* ¶ 22.) Empire has several federal trademark applications for these marks pending before the United States Patent and Trademark Office. (Declaration of Michael D. Hobbs in Support of Empire Distribution's Opposition, ¶¶ 6–11.) However, three of Empire Distribution's trademark applications have been suspended: The application for "Empire" with Serial No. 86590365 was suspended on July 17, 2015; the application for "Empire" with Serial No. 86590402 was suspended on July 17, 2015; and the application for "Empire Distribution" with Serial No. 86476822 was suspended on October 19, 2015. (Declaration of Molly M. Lens in Support of Fox's Reply, ¶ 11, Exs. 28–30.)

Defendant contends that the debut of the Empire Series caused confusion over the affiliation between Empire Distribution and Fox's Empire Series. (*See* Lens Decl., Ex. 5.) Unhappy with Fox's use of "Empire," Empire Distribution sent Fox a letter requesting that Fox cease and desist its use of the mark. After receiving the cease and desist demand, Fox initiated this lawsuit, asserting claims for declaratory relief against Empire Distribution for: (1) federal trademark infringement under 15 U.S.C. § 1125(a); (2) federal trademark dilution under 15 U.S.C. § 1125(c); and (3)

state unfair competition under Cal. Bus. & Prof.Code §§ 17200 *et seq.*

In response, Empire Distribution asserted counterclaims against Fox for: (1) federal trademark infringement, 15 U.S.C. § 1125(a); (2) federal trademark dilution, 15 U.S.C. § 1125(c); (3) federal unfair competition, 15 U.S.C. § 1125(a); (4) California statutory unfair competition and false advertising, Cal. Bus. and Prof.Code §§ 17200 and 17500, *et seq.*; (5) California common law trademark infringement; and (6) California trademark dilution, Cal. Bus. & Prof.Code § 14247.

Fox now moves for summary judgment on all claims in its Complaint and against all of Empire Distribution's counterclaims. Fox also moves the Court to strike the expert report of James Pampinella.

## II. *Legal Standard*

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "[T]he burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court– that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see also Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence, or by any other form of admissible evidence. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The moving

party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. *See id.* at 325, 106 S.Ct. at 2554.

As required on a motion for summary judgment, the facts are construed "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, the nonmoving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. *See* Fed. R.Civ.P. 56(e)(2) (nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial"). A "mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco,* 125 F.3d 1328, 1331 (9th Cir.1997) (quoting *Anderson,* 477 U.S. at 249, 252, 106 S.Ct. at 2510, 2512). Otherwise, summary judgment shall be entered.

## III. *Discussion*

Fox contends that summary judgment is appropriate because its use of "Empire" is protected by the First Amendment, and because Empire Distribution has failed to establish that there is a genuine issue of material fact as to consumer confusion. As explained below, the Court finds that Fox's use of "Empire" is protected by the First Amendment, and therefore does not reach the issue of consumer confusion.

### A. The First Amendment

The Lanham Act protects the public's right not to be misled as to the

source of a product. *Rogers v. Grimaldi,* 875 F.2d 994, 997 (2d Cir.1989). However, trademark rights do not allow "the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view." *Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894, 900 (9th Cir.2002). Courts must construe "the Lanham Act 'to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression.'" *Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 807 (9th Cir.2003) (quoting *Rogers,* 875 F.2d at 999).

■ In *MCA Records,* the Ninth Circuit adopted the *Rogers* test to determine when trademark protection must give way to expressive speech protected by the First Amendment. *MCA Records,* 296 F.3d at 902. Under the *Rogers* test, "[a]n artistic work's use of a trademark that otherwise would violate the Lanham Act is not actionable 'unless the use of the mark has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless it explicitly misleads as to the source or the content of the work.'" *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,* 547 F.3d 1095, 1099 (9th Cir. 2008) (quoting *MCA Records,* 296 F.3d at 902). The *Rogers* test applies to uses of a trademarked term in both the title and the body of a work. *Id.*

Empire Distribution implores the Court to analyze this case under the *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979) likelihood of confusion test. Empire Distribution asserts that *Sleekcraft* should govern because Fox is allegedly attempting to extend its use of another's trademark much further than in any other case applying *Rogers.* The Ninth Circuit has

repeatedly made clear, without qualification based on the extent of the use, that the *"only* relevant legal framework for balancing the public's right to be free from consumer confusion" against First Amendment rights is the *Rogers* test. *Brown v. Elec. Arts, Inc.,* 724 F.3d 1235, 1242 (9th Cir.2013) (emphasis added). Accordingly, the Court will consider this case under the two-pronged *Rogers* test.

### 1. The *Rogers* Test Does Not Include a Threshold "Cultural Significance" Inquiry

■ Empire Distribution contends that before applying the two-prong *Rogers* test, the Court must find that the "Empire" mark is "of such cultural significance that it has become an integral part of the public's vocabulary." *Rebelution, LLC v. Perez,* 732 F.Supp.2d 883, 887 (N.D.Cal.2010). Under this interpretation of the *Rogers* test, no First Amendment rights are implicated until a word or mark takes on "expressive meaning apart from [its] source-identifying function." *Id.* at 888; *see also Dita, Inc. v. Mendez,* No. CV 10–6277 PSG (FMOx), 2010 WL 5140855, at *9 (C.D.Cal. Dec. 14, 2010); *Warner Bros. Entm't v. Global Asylum, Inc.,* No. CV 12–9547 PSG (CWx), 2012 WL 6951315, at *45–46 (C.D.Cal. Dec. 10, 2012), *aff'd,* 544 Fed. Appx. 683 (9th Cir.2013).[2]

The cultural significance inquiry required under *Rebelution, Dita,* and *Global Asylum,* has been disapproved of by numerous courts. *E.g., VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC,* No. 3:15–CV–01729 LB, 2015 WL 5000102, at *9–10 (N.D.Cal. Aug. 21, 2015); *Mil–Spec Monkey, Inc. v. Activision Blizzard, Inc.,* 74 F.Supp.3d 1134, 1140 (N.D.Cal.2014); *Stewart Surfboards, Inc. v. Disney Book*

---

**2.** Although the district court's decision in *Global Asylum* was affirmed on appeal, the appellant challenged only the district court's analysis of a fair use defense. *Global Asylum,*

544 Fed.Appx. at 683. The Ninth Circuit therefore did not consider whether or not the *Rogers* test included a cultural significance requirement.

*Grp., LLC,* No. CV 10–2982 GAF (SSx), 2011 WL 12877019, at \*2–3 (C.D.Cal. May 11, 2011); *Winchester Mystery House, LLC v. Glob. Asylum, Inc.,* 210 Cal. App.4th 579, 592, 148 Cal.Rptr.3d 412, 421 (2012).

The dispositive case on this issue is *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.,* 547 F.3d 1095 (9th Cir. 2008). In *E.S.S.,* the Ninth Circuit was presented with · the argument that the mark at issue could not be protected under *Rogers* because it was not a cultural icon. *Id.* at 1100. The court dismissed this argument because it "miss[ed] the point." *Id.* Even more significantly, the court concluded that the use at issue was protected by the First Amendment even though the mark had "little cultural significance." *Id.* Thus, it is clear that the *E.S.S.* court did not interpret the *Rogers* test as including a threshold cultural significance inquiry. *See id.; see also Mil–Spec Monkey,* 74 F.Supp.3d at 1140–41 (explaining that courts which have imported a "cultural significance" inquiry into the *Rogers* test have done so based on a misreading of *MCA Records.)*

▇ The only threshold for applying the *Rogers* test is whether the allegedly infringing use is contained in an expressive work. *Brown v. Electronic Arts, Inc.,* 724 F.3d 1235, 1241 (9th Cir.2013) (holding that the "*Rogers* test is reserved for expressive works.") Both the Empire Series and the Empire Soundtracks are clearly expressive works, and are therefore entitled to First Amendment protection if they satisfy the *Rogers* test. *See Rogers,* 875 F.2d at 997 ("Movies, plays, books, and songs are all indisputably works of artistic expression and deserve protection.")

## 2. *Rogers* Prong 1

▇ The first prong of the *Rogers* test requires a showing that the use of a mark has artistic relevance to the underly-

ing work. *MCA Records,* 296 F.3d at 902. The Ninth Circuit has explained that the required "level of relevance merely must be above zero." *E.S.S.,* 547 F.3d at 1100. The word "Empire" is clearly relevant to Fox's work because the Empire Series tells the story of characters struggling for literal control over an entertainment company called "Empire Enterprises," and figurative control over the vast "empire" that Lucious Lyon has built. Additionally, the Empire Series is set in New York, the Empire State. Indeed, Empire Distribution concedes that the word "Empire" has artistic relevance to Fox's work. (*See* Opp'n, 11.)

However, Empire Distribution contends that the proper inquiry under the first prong of the *Rogers* test asks whether the junior use of the mark is a reference to the senior use. Under this interpretation of the *Rogers* test, it is not enough for a junior user to show a relevant use of a word which is part of the senior user's mark. Because Fox is clear that its use of "Empire" is not a reference to Empire Distribution, Empire Distribution contends that Fox fails to meet the first prong of the *Rogers* test.

In *Rebelution, supra,* the first prong of the *Rogers* test was interpreted as including this referential requirement. 732 F.Supp.2d at 888–89; *see also Dita, Inc. v. Mendez,* No. CV 10–6277 PSG (FMOx), 2010 WL 5140855, at \*2 (C.D.Cal. Dec. 14, 2010); *Warner Bros. Entm't v. Glob. Asylum, Inc.,* No. CV 12–9547 PSG (CWx), 2012 WL 6951315, at \*45–46 (C.D.Cal. Dec. 10, 2012). However, the *Rebelution* court has been criticized for misapplying the *Rogers* test. *See Stewart Surfboards, Inc v. Disney Book Grp., LLC,* No. CV 10–2982 GAF (SSx), 2011 WL 12877019, at \*4 (C.D.Cal. May 11, 2011); *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 947 F.Supp.2d 922, 933 n. 2 (N.D.Ind.2013);

*Rebellion Developments Ltd. v. Stardock Entm't, Inc.,* No. 12–12805, 2013 WL 1944888, at *3 (E.D.Mich. May 9, 2013). Additionally, several courts have found that the *Rogers* test protects a junior user even where the use of the mark made no reference to the senior user. *See Rebellion,* 2013 WL 1944888, at *3 (collecting cases).

While it is certainly true that in every Ninth Circuit case interpreting *Rogers,* the allegedly infringing use was a reference to the senior user, the Ninth Circuit has never stated that the *Rogers* test includes a "referential requirement." At most, the Ninth Circuit has suggested that this is a fact which a court may consider. *See MCA Records,* 296 F.3d at 901 ("[W]here an artistic work targets the original and does not merely borrow another's property to get attention, First Amendment interests weigh more heavily in the balance.")

■ The common thread in opinions interpreting the *Rogers* test is that a junior user "must not have arbitrarily chosen to use the trademarks just to exploit the[ir] publicity value, but rather the use of the trademarks must have genuine relevance to the work. This, however, does not require the [junior user's] work to be 'about' the trademark or what the trademark signifies." *Stewart,* 2011 WL 12877019 at *4 (internal quotations and citation omitted). This case illustrates the principle: "Empire" has genuine relevance to the Empire Series and it was not arbitrarily chosen to exploit Empire Distribution's fame. Moreover, it would be a perverse result if Fox's use of "Empire" would be protected if Fox had claimed that the Empire Series was in some minimal way a commentary on Empire Distribution, but the use would not be protected if, as is the case here, Fox had disclaimed any such use. Such a distinction serves neither the interests of the First Amendment nor the Lanham Act.

*Fortres Grand* provides another apt illustration. There, Fortres Grand owned "Clean Slate," a program which was used to protect computer security. *Fortres Grand,* 947 F.Supp.2d at 924. In the Batman film "The Dark Knight Rises," one of the plot lines centered around "Clean Slate," a fictional program capable of erasing an individual's criminal history. *Id.* The court rejected the argument that in order for the movie's use of "Clean Slate" to be protected, it had to be "some well-thought-out 'expressive' critique of the trademark" owned by Fortres Grand. *Id.* at 932. Instead, the court held that there was no logical reason to limit *Rogers* to situations where the use essentially amounted to parody, and noted that such an interpretation could severely chill otherwise constitutionally protected speech. *Id.* at 932–33. The same result is appropriate here, where Empire Distribution contends that the common word "Empire" cannot be used in an expressive work unless it is referencing Empire Distribution.

In *E.S.S.,* the Ninth Circuit held that "only the use of a trademark with *no* artistic relevance to the underlying work *whatsoever* does not merit First Amendment protection." *E.S.S.,* 547 F.3d at 1100 (emphasis in original, internal quotations omitted). The Ninth Circuit also made clear that the work need not be "about" the trademark, requiring only a level of "relevance merely above zero." *Id.* Interpreting the first prong of the *Rogers* test as including a reference requirement would be inconsistent with these standards and would unnecessarily upset the carefully crafted balance between the First Amendment and the Lanham Act.

### 3. *Rogers* Prong 2

■ The second prong of the *Rogers* test requires a junior user to show that their work does not explicitly mislead as to the source or content of the work. *MCA*

*Records,* 296 F.3d at 902. The Ninth Circuit has been clear that the use of a mark in the title of a work, divorced from other explicitly misleading actions, is not enough to bar First Amendment protection. *Id.*

Once again, the parties dispute the proper test to apply when determining whether the work is explicitly misleading. Fox contends that the Court should employ a straightforward application of the test, requiring an "explicit indication, overt claim, or explicit misstatement" as to the source of the work. *Brown,* 724 F.3d at 1246 (citing *Rogers,* 875 F.2d at 1001) (internal quotations omitted). On the other hand, Empire Distribution contends that the second prong of the *Rogers* test imports the *Sleekcraft* likelihood of confusion analysis. Like the parties, lower courts have also split on the proper standard. *Compare Kiedis v. Showtime Networks, Inc.,* No. CV 07–8185 DSF (MANx), 2008 U.S. Dist. LEXIS 124334, at *14–15 (C.D.Cal. Feb. 19, 2008) (requiring a likelihood of confusion analysis in the second prong of the *Rogers* test) *with Stewart Surfboards, Inc v. Disney Book Grp., LLC,* No. CV 10–2982 GAF (SSx), 2011 WL 12877019, at *7 (C.D.Cal. May 11, 2011) (refusing to do the same).

The Court finds that any ambiguity about the proper standard was resolved by the Ninth Circuit's decision in *Brown.* There, the senior user put forward strong consumer survey evidence demonstrating a likelihood of confusion, which he contended established a triable issue of fact as to the second prong of the *Rogers* test. *Brown,* 724 F.3d at 1245–46 (emphasis added). The Ninth Circuit discredited the importance of the evidence, explaining that:

> Adding survey evidence changes nothing. The [second prong of the *Rogers*] test requires that the use be explicitly misleading to consumers. *To be relevant, evidence must relate to the nature of the behavior of the identifying material's user, not the impact of the use.* Even if Brown could offer a survey demonstrating that consumers of the Madden NFL series believed that Brown endorsed the game, that would not support the claim that the use was explicitly misleading to consumers.

*Brown,* 724 F.3d at 1245–46 (emphasis added).

Thus, it is clear that no amount of evidence showing only consumer confusion can satisfy the "explicitly misleading" prong of the *Rogers* test because such evidence goes only to the "impact of the use" on a consumer. *See id.* Even in situations where there is widespread consumer confusion, the Ninth Circuit has struck the balance in favor of protecting First Amendment expression: " 'The risk of misunderstanding, not engendered by any explicit indication on the face of the [work], is so outweighed by the interest in artistic expression as to preclude application of the [Lanham] Act.' " *Id.* at 1246 (quoting *ETW Corp. v. Jireh Publishing, Inc.,* 332 F.3d 915 (6th Cir.2003)). It follows that the *Sleekcraft* likelihood of confusion analysis is inapplicable to the second prong of the *Rogers* test.

Here, Empire Distribution's argument under the second prong of the *Rogers* test focuses solely on consumer confusion. (*See* Opposition, 12.) Because *Brown* holds that such consumer confusion is irrelevant and there is no evidence that of an "explicit indication, overt claim, or explicit misstatement" as to the source of the work, the Court concludes that Fox has not explicitly misled consumers about its affiliation with Empire Distribution.

▮ In sum, the First Amendment protects the use of a trademark in an expressive work if the use of the mark has artistic relevance to the underlying work and does not explicitly mislead as to the source or content of the work. *MCA Rec-*

*ords,* 296 F.3d at 902. Empire Distribution asserts that: (1) Fox uses "Empire" in an expressive work, although the mark has not reached the level of cultural significance; (2) Fox's use of "Empire" is relevant to the Empire Series, although the use is not a reference to Empire Distribution; and (3) Fox has not used "Empire" in an explicitly misleading way, although the use has caused consumer confusion. Thus, Empire Distribution has conceded that Fox's use of "Empire" satisfies all of the requirements of the *Rogers* test. Empire Distribution's only arguments against summary judgment require the Court to rewrite the *Rogers* test. The Court declines to do so.

**B. Remaining Claims**

Because the Court concludes that Fox's use of "Empire" is protected by the First Amendment and falls outside the proscriptions of the Lanham Act, Fox is entitled to summary judgment on all claims asserted in Fox's Complaint and Empire Distribution's Counterclaim. *See MCA Records,* 296 F.3d at 902 n. 2, 906–907; *Kerr Corp. v. Tri Dental, Inc.,* No. SACV 12–0891 DOC (CWx), 2013 WL 990532, at *4 (C.D.Cal. Mar. 11, 2013); *Mallard Creek Indus., Inc. v. Morgan,* 56 Cal.App.4th 426, 434–35, 65 Cal.Rptr.2d 461, 466–67 (1997).

**Conclusion**

For the foregoing reasons, the Court grants Fox's Motion for Summary Judgment. The Court shall enter a Judgment consistent with this Order. Because the Court rules in favor of Fox on First Amendment grounds, the Court denies as moot Fox's Motion to Strike and Empire Distribution's request for a continuance

3. The discovery which formed the basis of Empire Distribution's request under Rule 56(d) was not germane or relevant to the First Amendment bar raised by Fox's Motion for

under Federal Rule of Civil Procedure 56(d).[3]

IT IS SO ORDERED.

Summary Judgment. See *Brown,* 724 F.3d at 1239 (a *Rogers* defense to claims of trademark infringement may be adjudicated through a motion to dismiss).